**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR ENVIRONMENTAL SCIENCE ACCURACY AND RELIABILITY, a nonprofit corporation f/k/a COUNCIL FOR ENDANGERED SPECIES ACT RELIABILITY, a nonprofit corporation, 1990 3rd Street, Suite 400 Sacramento, CA 95811-6989 | ) ) ) ) ) ) ) ) ) |
| Plaintiff | ) ) |
| vs. | ) ) |
| KEN SALAZAR, in his official capacity as Secretary of the Interior; 1849 C. Street, N.W. Washington, D.C. 20240 | ) ) ) ) ) |
| DAN ASHE, in his official capacity as Director, United States Fish & Wildlife Service, and UNITED STATES FISH & WILDLIFE SERVICE, an agency of the United States Department of the Interior 1849 C. Street, N.W. Washington, D.C. 20240 | ) ) ) ) ) ) ) ) ) |
| Defendants | ) ) ) ) |

Civil Action No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I. INTRODUCTION**

1.   The American eel (*Anguilla rostrata*) is at substantial risk of extinction due to habitat loss and modification, overutilization, inadequate regulatory protection disease, and other natural and manmade factors. The eel faces increasing dangers from hydropower turbines, disease, and

unchecked commercial harvesting. Absent the protection afforded by the Endangered Species Act (ESA), the species population will become critically and irreversibly low.  On this basis, the CENTER FOR ENVIRONMENTAL SCIENCE ACCURACY AND RELIABILITY f/k/a the Council for Endangered Species Act Reliability ("CESAR") petitioned the Secretary of the Interior (the "Secretary") on April 30, 2010, to make a listing determination regarding the American eel. The ESA requires the Secretary to publish a finding within 90-days, determining, to the maximum extent practicable, whether the Petition presents substantial information indicating that a listing for the eel "may be warranted".  If the determination is made that there is substantial information presented that the petition may be warranted, the ESA requires that the Secretary initiate a status review. 16 U.S.C. § 1533(b)(3)(A).  The ESA mandates that the results of this review be published within twelve months after receiving a petition. 16 U.S.C. § 1533(b)(3)(B).   At that time, the Secretary must make a determination regarding whether listing the species as endangered or threatened is "warranted" and to publish the determination in the Federal Register. 16 U.S.C. § 1533(b)(3)(B).

2.   The Secretary did not publish a 90-day finding until September 29, 2011, over a year past its original due date. The due date for the 12-month finding was April 30, 2011, making it impossible for the Secretary to comply with this statutory deadline.

3.   CESAR brings this lawsuit to enforce the ESA's requirement mandating that the Secretary publish in the Federal Register a finding within 12-months "after receiving a petition" as to whether the petition is or is not warranted. Plaintiff seeks an order declaring that the Defendants' failure to comply with this statutory requirement constitutes a violation of the ESA

and the Administrative Procedures Act, 5 U.S.C. § 706 ("APA"). Plaintiff further seeks an order

requiring the Secretary to make a 12-month finding on the petition by a date certain.

## II. JURISDICTION AND VENUE

4.   This court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) (actions

under the ESA); 16 U.S.C. § 1540(g) (ESA citizen suit provision); 5 U.S.C. § 702 (right of

review under the Administrative Procedure Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C.

§ 1346 (action against the United States); 28 U.S.C. § 1361 (action to compel an officer of the

United States to perform his or her duty); and 28 U.S.C. § 2201-02 (power to issue declaratory

judgments and injunctive relief in cases of actual controversy).

5.   As required by 16 U.S.C. § 1540(g), CESAR provided the Secretary with written

notice of the violations alleged herein more than 60 days prior to the commencement of this

action.

6.   Despite receiving notice, the Secretary has failed to remedy the ESA violations, and

therefore an actual controversy exists within the meaning of 28 U.S.C. § 2201(a).

7.   Venue is proper in this case pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. §

1540(g)(3)(A).

## III. PARTIES

8.   Plaintiff  CESAR is a California nonprofit, public interest organization whose mission

is to bring scientific rigor to regulatory decisions undertaken pursuant to environmental statutes,

to ensure consistent application of these statutes throughout all industries and all sectors, and to

fulfill the educational goals of its members and provide educational information on the ESA and

its application to the general public in the process. CESAR fulfills its mission by holding

educational seminars, disseminating educational materials to its members, participating in administrative proceedings, and commenting on and initiating litigation about species listings under the ESA.

9.   CESAR, its staff and its members are greatly concerned about the steep decline of the American eel and have various interests in the American eel, including aesthetic, educational, recreational, and scientific interests.  CESAR's members live and work in the communities in the American eel's range. CESAR, its members and staff are dedicated to protecting the American eel and committed to promoting a strategy to ensure its sustainability and the overall health of its ecosystem, which includes the maintenance of viable populations of the American eel.  The species is a critical part of the freshwater ecosystem of the Eastern United States. Eels are also a valuable food source and the stocks of these fish require better protections and monitoring.  The American Eel's continuing decline adversely affects the aesthetic, educational, recreational, and scientific interests of CESAR, its members and its staff.  CESAR brings this action on its own behalf and on behalf of its adversely affected members.

10. Defendant KEN SALAZAR is the Secretary of the Interior and is sued in his official capacity. As Secretary, Mr. Salazar is responsible for the enforcement and implementation of the ESA. Secretary Salazar has the authority and ability to remedy the harm inflicted by the Service's failure to comply with the ESA.

11. Defendant DAN ASHE is sued in his official capacity as the Director of the United States Fish and Wildlife Service (FWS). He is responsible for administering and implementing the ESA.

12. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of Interior authorized and required by law to enforce the ESA. The service has been delegated the authority by the Secretary of Interior to make findings and promulgate listing regulations under the ESA, on his behalf. The service has failed to publish a 12-month final determination regarding CESAR's petition to list the American eel as threatened within the statutory time-frame contained in the ESA.

## IV. LEGAL BACKGROUND

13. The ESA was enacted for the purpose of providing a means of protection and conservation for endangered and threatened species and the ecosystems upon which they depend. ESA § 2(b), 16 U.S.C. 1531(b).

14. To achieve this purpose the Secretary is required to make a determination on the status of a species and list that species as either "threatened" or "endangered" if they are facing extinction due to any of the following:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) over-utilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

ESA § 4(a)(1), 16 U.S.C. § 1533(a)(1).

15. A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." ESA § 3(6), 16 U.S.C. § 1532(6). A species is "threatened" if it

is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." ESA § 3(20), 16 U.S.C. § 1532(20).

16. A species must be formally listed as "threatened" or "endangered" in order to receive the substantive protections provided by the ESA.  The Act prevents the taking of listed species, without a permit, by any person, thus protecting listed species from actual and attempted harassment, harm, capture, and death. Protection is also extended to the habitats of listed species, preserving the land and ecosystems for the safety of the animals. Under Section 7 of the ESA, "each Federal agency shall confer with the Secretary on any agency action which is likely to jeopardize the continued existence of any species proposed to be listed under section 1533 of this title or result in the destruction or adverse modification of critical habitat proposed to be designated for such species." 16 U.S.C. § 1536(a)(4). The Secretary is also required under the act to "develop and implement" plans for the recovery of species, per 16 U.S.C. § 1533(f), and is authorized to provide federal funds to states to assist them in preserving and protecting listed species. 16 U.S.C. § 1535(d). This means that listing a species is a critical step in ensuring that a species is protected.

17. Any interested citizen can seek the ESA's protections for a species by filing a petition asking the Secretary to list the species as either "threatened" or "endangered".  16 U.S.C. § 1540(g); 50 C.F.R. § 424.14(a)(2006).

18. Upon receiving the petition, the Secretary has 90-days to review the petition and to make a finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1).

19. The Secretary is required to promptly publish in the Federal Register the results of this 90-day finding if he believes the petition has presented evidence that may warrant listing the species. Upon making this finding, the Secretary must promptly commence a review of the status of the species concerned. ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1).

20. Within 12 months of receiving the petition, the Secretary must make one of the following findings: that the petitioned action is not warranted; the petitioned action is warranted; or that the petitioned action is warranted, but that (i) listing is precluded by pending proposals to determine whether any species is endangered or threatened, or (ii) expeditious progress is being made to add qualified species to either of the lists. Regardless of what the Secretary determines, he must publish the results of the review in the Federal Register within 12 months of receiving the petition. ESA § 4(b)(3)(B), 16 U.S.C. § 1533(b)(3)(B).

21. If the Secretary determines that listing the species is warranted, a proposed rule regarding the listing of the species must be published in the Federal Register. ESA § 4(b)(3)(B), 16 U.S.C. § 1533(b)(3)(B).

22. It is critical for the Secretary to comply with the non-discretionary timetables and deadlines established by the ESA as a species cannot be protected under the law until formally listed as threatened or endangered.

## V. FACTUAL BACKGROUND

**A.     Eels are a Threatened Species**

23. The American eel is one of North America's most unique fish.  Eels are catadromous (breed in the ocean and live in fresh water) and diadromous (can travel between fresh and salt water).

24. American eels belong to one well-mixed largely dispersed population. The European eel (*Anguilla anguilla*) is also found in North America, but is part of a separate and distinct population and not found in the same habitat. Eels are distributed all along the Eastern seaboard and historically were found far inland via river systems such as the Mississippi River.

25. CESAR has provided substantial information to the USFWS that the American eel population is in steep decline. European eels have become nearly extinct and the eel fishery in Europe has collapsed, increasing the demand worldwide (particularly in Europe and Asia) for American eels. U.S. harvests of eels have also declined greatly; nearly 64% of the long-term average since 1950 and an even steeper decline of 72% in recent decades. The evidence demonstrates that eels are a threatened species due to the combined affects of all the factors considered under the ESA: habitat loss and modification;  overutilization; disease; inadequacy of existing regulatory mechanisms; and other factors.

26. CESAR believes that the American eel population is in severe decline due, in large part, to habitat loss and modification across much of its historic range.  The eels have been eliminated in many areas of their historic range. Much of this loss is attributable to reduced accessibility to freshwater streams due to habitat changes limiting access in coastal tributaries and drainage systems.  Accessibility has been particularly limited by the construction of dams, preventing eels from migrating upstream to freshwater habitats and downstream to the ocean to

spawn, and killing large, fecund females as they travel downstream to spawn, thus disproportionately affecting reproductive ability.

27. The Atlantic States Marine Fisheries Commission (ASMFC) maintains a fishery management plan (FMP) for the American eel and reported in 2008 that the stock has been in decline for the past two decades and is at or near its historic low.  Eels are harvested at all stages in their lifecycles (except in the larva stage) and in all of their habitats. Eels are harvested for aquaculture, bait and food. CESAR believes that the ASMFC FMP for the American eel does not adequately protect eels or limit catches in all areas of their habitat.

28. CESAR provided the FWS information documenting that American eels are subject to threats from parasites and diseases, such as the swim bladder parasite *Anguillicola crassus*. The spread of this particular parasite is a relatively new development and is currently an area of increased study. Infected eels may experience great difficulty in migrating to spawning grounds in the Sargasso Sea.  Experimental evidence has demonstrated that the parasite makes eels more vulnerable to hypoxia and damages the swim bladder decreasing the eels' swimming ability and endurance. This parasite may also affect their ability to produce eggs or sperm if they do reach spawning grounds.

29. CESAR believes that the regulatory agencies responsible for preserving eel populations have failed in their responsibility. Current regulations and management plans developed by government agencies have failed to halt the decline of the eel population. Responsible regulatory agencies acknowledge that the eel population is declining, but have failed to maintain adequate oversight of the population and continue to allow commercial harvesting while maintaining that stock status and size are "unknown".  Multiple agencies have authority to

initiate actions to help protect the eel's and maintain their habitat, but have declined to do so. The Service has the authority to require the licensees of private hydro-electric dams to provide safe passage for eels via eel ladders or other mechanisms, but has declined to exercise this authority. The National Marine Fisheries Service (NMFS) has the authority to do the same, yet as failed to exercise this authority. The Federal Energy Regulatory Commission (FERC) also has the authority to make this same requirement, but has not. The EPA has the authority under the Clean Water Act to make the same requirement regarding hydro-electric dams, but has not made any such requirement.  The ASMFC has the authority to limit or prohibit the harvest of eels along the Atlantic seaboard, but has declined to set quotas despite acknowledging the decline in the eel population.

30. The eel population is also threatened by other factors such as changes in oceanic conditions; water contamination from mercury and other elements and chemicals; and other potential threats such as electro-magnetic fields generated by underwater cables, acoustic disturbance from off-shore wind development and the potential production of biofuel made from floating biomass harvested from the open ocean.  In FWS's "Finding on a Petition to List the American Eel as Threatened" dated September 29, 2011, FWS stated "[w]e find that the information provided in the petition, as well as other new information in our files, presents substantial or commercial information indicating that the petition may be warranted by a causal link between oceanic conditions . . . decreasing glass eel recruitment." 76 Fed. Reg. 60431, 60432 (Sept. 29, 2011)

**B.      Procedural History**

31. On May 27, 2004,  FWS and NMFS received a petition to review the American eel's status from the ASMFC in light of an apparent decline in commercial eel harvest. FWS and NMFS received another petition to review the eel's status on November 28, 2004, from Douglas Harold Watts of Augusta, Maine, and Timothy Allan Watts of South Middleborough, Mass., alleging that destruction and modification of habitat, overutilization, inadequacy of existing regulatory mechanisms, and other natural and manmade factors threatened the continued existence of the species.  The Service published a 90-day finding in the Federal Register on July 6, 2005, concluding that substantial biological information existed to warrant a more thorough examination. The Service began a status review and on February 2, 2007, published a notice of 12-month finding determining that the listing the American Eel was not warranted at that time.

32. On April 30, 2010, CESAR submitted a 67-page petition to the Service to list the eel as threatened pursuant to the ESA. The petition contained new information that became available after the "not warranted" finding published by the Service in 2007.  The Service responded acknowledging receipt of the petition by letter dated May 13, 2010.  A 90-day finding was not published by August 11, 2010 (on or about the 90-day deadline for issuing an initial determination on the petition).  On September 7, 2010, CESAR wrote a letter to the Secretary giving notice that Section 4 of the ESA had been violated due to the failure of the Secretary to publish a 90-day finding and that CESAR intended to file suit.  On November 23, 2010, the Secretary sent a letter (again, via the Service) to CESAR acknowledging the receipt of their notice and intent to sue. The letter stated that due to a lack of federal appropriations the Secretary

was unable to address the petition and that it was anticipated that funding would become available in fiscal year 2011.

33. On September 29, 2011, the Secretary published a 90-day finding which found that the "petition presents substantial scientific or commercial information indicating that listing this species may be warranted." 90-Day Finding on Petition to List American Eel, 76 Fed. Reg. 60431, 60432 (Sept. 29, 2011).

34. A 12-month finding was <u>not</u> made on April 30, 2011 (on or about the 12-month deadline for issuing a final determination on the petition). On December 23, 2011, CESAR sent another letter to the Service giving notice of CESAR's intent to sue the Secretary for violating Section 4 of the ESA by failing to publish a 12-month determination.

35.    In a letter dated February 22, 2012, the Acting Chief, Office of ESA Litigation of the Service, wrote Mr. David Bernhardt, counsel for CESAR, indicating that on December 23, 2011, the Service received CESAR's notice that it intends to sue the Service for failing to issue a 12-month finding on the petition.  Nevertheless, the letter does not indicate when it will complete the statutory required 12-month finding. Instead, it states that: "[t]her Service plans to complete its status review and issue a 12-month finding on CESAR's petition as resources permit."

36. To date, the Secretary has made no determination based whatsoever on the petition submitted by CESAR on April 30, 2010.

## VI. FIRST CLAIM FOR RELIEF

### (VIOLATION OF ENDANGERED SPECIES ACT, 16 U.S.C. § 1533(B))

37. CESAR alleges and incorporates by reference all the allegations set forth in this Complaint, as though fully set forth below.

38. The Secretary's failure to make a 12-month finding on the American eel within the statutorily mandated timeframe is a violation of the ESA and its implementing regulations. 16 U.S.C. §§1533(b)(3)(B) and 1540(g) .

## VII.SECOND CLAIM FOR RELIEF

### (VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 706(2))

39.     CESAR alleges and incorporates by reference all the allegations set forth in this Complaint, as though fully set forth below.

40. The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. §706(l).  The Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe  proper procedure under the Administrative Procedures Act, 5 U.S.C. § 706(2).

## VIII. PRAYER FOR RELIEF

41. Declare that the Secretary violated its mandatory, non-discretionary duty under 16 U.S.C. § 1533(b)(3)(B) by failing to make a 12-month finding in response to Plaintiff's petition to list the  American eel as threatened. 16 U.S.C.  §§1533(b)(3)(B) and 1540(g) .

42.  Defendants are in violation of the ESA and/or the APA for failing to promulgate a final listing rule for the American Eel;

43. Provide preliminary and permanent injunctive relief compelling the Defendants to publish in the Federal Register a 12-month finding under the ESA by a date certain;

44. Award Plaintiff  its costs of litigation, including reasonable attorneys' fees and expert witness fees (16 U.S.C. § 1540(g)); and

45. Grant Plaintiffs such other relief as the Court deems just and proper.

DATED: August 6, 2012

/s/ *Ryan A. Smith*
_____

David Bernhardt, (DCB 991472/DC Court #24475)
Ryan A Smith, (DCB/DC Court  #985586)
Brownstein Hyatt Farber Schreck, LLP
1350 I Street, N.W., Suite 510
Washington, DC 20005-3305
Phone: 202-296-7353
Fax: 202-296-7009
Email: dbernhardt@bhfs.com
        rsmith@bhfs.com

Attorneys for Plaintiff

14